IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JOHN KEBIRO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:04-CV-177 |
| | § | |
| WAL-MART STORES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now before the court is Defendant's Motion for Summary Judgment, filed July 21, 2005.[1] For the reasons stated in this opinion, Defendant's Motion is GRANTED.

**BACKGROUND**

Defendant Wal-Mart hired Plaintiff John Kebiro on January 10, 2000 to work as a cashier at its store in Lewisville, Texas (Store #217).[2] The primary responsibilities and functions of a cashier at Wal-Mart include providing good customer service; operating register equipment; ringing up customer purchases; organizing and sustaining cash and coin levels in the register drawer; scanning, deactivating, and bagging customers' merchandise; and accepting payment from and giving correct change to Wal-Mart customers. Pl.'s Resp. at 114. Approximately three months into his job at Store #217, Kebiro received his first of three disciplinary warnings on March 28, 2000. *Id*. at 101. He was disciplined for calling his supervisor a liar and saying she was stupid in the

[1]Plaintiff filed a response to Defendant's motion on September 1, 2005, Dkt. # 60, to which Defendant filed a reply on September 12, 2005, Dkt. # 65.

[2]Kebiro is a 59-year old black male of Kenyan descent.

course of a disagreement over how long he had been on a break. *Id*.

Roughly a year after Kebiro was hired at Store #217, he requested a transfer to a Wal-Mart location closer to his house. *Id*. at 119. Wal-Mart granted Kebiro's request on March 1, 2001 and shortly thereafter he began working as a cashier at a Wal-Mart location in Irving, Texas (Store #2649). *Id*. It was there that, on May 22, 2002, Kebiro received a second disciplinary warning. *Id*. at 100. On this occasion, Kebiro was warned about violating Wal-Mart's prohibition on working overtime and informed that additional insubordination would, like the previous warning, merit a written reprimand. *Id*.

On June 4, 2002, Kebiro sustained an injury at work. *Id*. at 87 & 119. As a result of injuries to his neck, back, and shoulders, Kebiro was placed on work restrictions that varied intermittently over the course of the following year. *Id*. at 82-95. Kebiro's initial restrictions, prescribed on June 28 and re-prescribed on July 19, 2002, prohibited him completely from kneeling, squatting or twisting his body, and limited his ability to stand and sit to a maximum of four hours a day, respectively, and stoop or push and pull objects to a maximum of two hours a day. *Id* at 88-89. Because these limitations interfered with Kebiro's ability to perform the functions of a cashier, he was assigned to work as a door greeter from June 2002 until early December 2002, at which point, his restrictions were lifted and he returned to his position as a cashier. *Id*. at 119. Shortly after receiving a clean bill of health, however, Kebiro's initial work restrictions were reinstated in March 2003 and he was again assigned to work as a door greeter until June 2003. *Id*. at 90 & 119; Def.'s Ex. 8 at ¶ 10.

At the end of March 2003, Kebiro applied for Wal-Mart's assistant manager training

program.[3] Def.'s Ex. 7 at ¶¶ 10 & 11. Under Wal-Mart's hiring procedure, after an applicant has applied for the program, the local district manager contacts the applicant's store manager and asks for a recommendation. *Id*. at ¶ 6. If the store manager recommends the applicant for the program, the district manager interviews the applicant and then determines whether or not the applicant should be selected. *Id*. While there is no single factor that qualifies an applicant for the program, an applicant generally must have previous experience as a supervisor in the retail industry or have prior knowledge and experience handling some of the key functions of the assistant manger position, such as assuming a leadership role in a significant area of the store, assisting with personnel or payroll matters, or working on the sales floor. *Id*. at ¶¶ 7 & 8.

In this case, Kebiro was not selected for the assistant manager training program. *Id*. at ¶ 13. Kebiro asserts that this was because of his age. *See* Def.'s Ex. 5. Wal-Mart, on the other hand, claims that Kebiro was not qualified to be an assistant manager. According to Trent Crow, Kebiro's district manager at the time, the reasons Kebiro was not selected include his failure to be recommended for the program by his store manager; lack of management, supervisory or sales floor experience in the retail industry; and inexperience dealing with inventory, payroll or personnel. *Id*. at ¶ 12. Because Kebiro has failed to produce any evidence to contradict Crow's testimony, the court finds that it is undisputed, and therefore conclusively established as a matter of law, that Kebiro was not sufficiently qualified to be an assistant manager at Wal-Mart and that neither his age nor his national origin played any part in Wal-Mart's decision to deny his application on this occasion or when he applied for the same position in February 2004.

Approximately one month after Kebiro applied for the assistant manager training program,

---

[3] Kebiro applied unsuccessfully for a promotion to the same position in February 2004 as well.

he applied for an available support manager position.[4] Def.'s Ex. 12 at ¶ 4. As above, Kebiro was not selected for the position. Def.'s Ex. 5. And as above, while Kebiro claimed that he was not given the promotion because of his age, he produced no evidence to prove that assertion. *Id*. Wal-Mart, on the other hand, provided the court with an affidavit from Earl Graves, Kebiro's store manager at the time. *See* Def.'s Ex. 12. According to Graves, Kebiro was not selected for the position because he had no previous experience working as a supervisor at Wal-Mart or handling the Telzon, the handheld electronic unit that Wal-Mart managers use to conduct inventory. *Id*. at ¶¶ 6 & 7. The applicant selected for the program, on the other hand, had previous experience working as an inventory control supervisor at Wal-Mart and had significant experience operating the Telzon. *Id*. at ¶¶ 5-7. The court finds accordingly that it is factually undisputed, and therefore conclusively established as a matter of law, that Kebiro was not sufficiently qualified to hold a support manager position at Wal-Mart and that neither his age nor his national origin played any part in Wal-Mart's decision to deny his application on this occasion or when he applied for the same position in March 2004.

In June 2003, Kebiro applied for one of two available customer service manager positions at Store #2649.[5] Kebiro again was not selected for the promotion. And again, while Kebiro claimed it was because of his age, he failed to produce any evidence tending to show this was so. As with the previous promotions, Wal-Mart adduced un-controverted evidence that Kebiro was not sufficiently qualified to be a customer service manager. *See* Def.'s Ex. 8. According to the affidavit

---

[4]Kebiro applied unsuccessfully for a promotion to the same position in March 2004 as well. Also, it was around this time that Kebiro received another written warning regarding his failure to adhere to Wal-Mart's overtime policy. *See* Pl.'s Resp. at 102.

[5]Kebiro applied unsuccessfully for a promotion to the same position in February 2004 as well.

of James Bozard, Kebiro's store manager at the time he applied for the customer service manager position, Kebiro lacked the requisite qualifications because he had less cashier experience than the other applicants and because, at that point, he had two disciplinary warnings in his employee file. *Id*. at ¶ 9. Moreover, because Kebiro was still under work restrictions from his previous injury, it is Wal-Mart's contention that he would have been unable to perform the essential functions of a customer service manager position. *Id*. at ¶ 10. The court therefore finds that it is factually undisputed, and therefore conclusively established as a matter of law, that Kebiro was not sufficiently qualified to be a customer service manager at Wal-Mart and that neither his age nor his national origin played any part in Wal-Mart's decision to deny his application on this or any other occasion.

Approximately six months later, after filing one of the two charges of discrimination with the EEOC discussed below, Kebiro sought yet another promotion with Wal-Mart. *See* Def.'s Ex. 10 at ¶ 7. This time Kebiro applied for a position as a department manager in the furniture department. Id. at ¶ 8. As in the previous cases, Kebiro was not promoted. *Id*. at ¶ 9. And as in the previous cases, while Kebiro claims it was because Wal-Mart was discriminating against him, albeit this time based on his national origin in addition to his age, he has adduced no evidence to support this claim. Wal-Mart, on the other hand, has provided un-controverted evidence that the reason Kebiro was not given the department manager position was because he was not sufficiently qualified. According to the affidavit of Jacquelyn Robinson, Kebiro's assistant manager at the time, Kebiro's experience as a front-end cashier and people greeter did not give him the requisite experience to be a department manager. *Id*. Robinson specifically pointed to Kebiro's lack of experience working on the sales floor, as sales floor experience is "an extremely important item that persons interested

in a Department Manager should have." *Id.* It is additionally evident that Kebiro's lack of supervisory experience hindered his chances of getting the promotion sought, as the person selected for the position had experience as a department manager in the pharmacy department. *Id.* In light of this, the court finds that it is factually undisputed, and therefore conclusively established as a matter of law, that Kebiro was not sufficiently qualified to be a department manager at Wal-Mart and that neither his age nor his national origin played any part in Wal-Mart's decision to deny his application for department manager.

Over the course of the following year, Kebiro filed two separate charges of discrimination with the EEOC. *See* Def.'s Ex. 5 & 6. The first charge, filed on June 18, 2003, alleged that Wal-Mart's failure to promote him to three of the abovementioned positions constituted age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1).[6] *See* Def.'s Ex. 5. In addition, Kebiro claimed that he was "being harassed and intimidated in that I am denied breaks for every two hours which other employees are allowed; I am required to work on the cash register which is not light duty and not the Door Greeter which would meet my light duty restrictions." *Id.* The second charge, filed on March 24, 2004, alleged that Wal-Mart's failure to promote Kebiro to four additional managerial positions constituted discrimination based upon his national origin and age in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the ADEA, respectively.[7] *See* Def.'s Ex. 6. Kebiro further alleged that he was being retaliated against in violation of Title VII and the ADEA. *Id.*

---

[6]The specific acts of discrimination included in Kebiro's June 2003 charge include his failure to be promoted to a support manager position in April 2003; the assistant manager training program in May 2003; and a customer service manager position in June 2003. *See* Def.'s Ex. 5.

[7]The specific acts of discrimination included in Kebiro's March 2004 charge include his failure to be promoted to a customer service manager position in December 2003; customer service and assistant manager positions in February 2004; and a support manager position in March 2004. *See* Def.'s Ex. 6.

Soon after receiving the EEOC's permission to sue Wal-Mart, Kebiro filed this case. His complaint alleges that Wal-Mart retaliated and discriminated against him as well as harassed him because of his race, gender, age and national origin. *See* Pl.'s Compl. On November 9, 2004, Wal-Mart filed a motion with the court to dismiss Kebiro's claims of race and gender discrimination. Because Kebiro failed to exhaust his administrative remedies with respect to these claims, the court granted Wal-Mart's motion on December 27, 2004. Of immediate concern to the court is Wal-Mart's motion for summary judgment on Kebiro's remaining claims.

**SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). According to the United States Supreme Court, this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Moore v. Miss. Valley State Univ.*, 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

In this case, because Wal-Mart does not bear the burden of proof at trial on any of the claims upon which it is seeking summary judgment, its burden at this stage may be discharged simply by showing that there is an absence of evidence to support Kebiro's claims. *See Celotex*, 477 U.S. at 325. Once this is done, summary judgment is mandatory unless Kebiro sets forth "specific facts

showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

**Kebiro's Title VII & ADEA Discrimination Claims**

Title VII and the ADEA, in virtually identical language, make it unlawful for an employer to discriminate against an employee with respect to the employee's compensation, terms, conditions, or privileges of employment because of, *inter alia*, the employee's national origin or age. *See* 42 U.S.C. § 2000e-2(a) (Title VII); 29 U.S.C. § 623(a)(1) (ADEA). Because the same standard of proof applies to discrimination claims under Title VII and the ADEA, *Roberson v. Alltel Information Services*, 373 F.3d 647, 651 (5th Cir. 2004) (citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)), the court's discussion of Kebiro's discrimination claims is consolidated.

When determining whether summary judgment is the proper means of adjudicating discrimination claims under Title VII and the ADEA, courts apply the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To overcome a defendant's motion for summary judgment under this framework, a plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Id*. at 801. To do so in the context of a failure to promote case, a plaintiff must prove by a preponderance of the evidence that: (1) he belongs to a protected class; (2) he was qualified for the promotion sought; (3) he did not receive the promotion sought; and (4) that his employer either left the position open or filled it with a person outside the plaintiff's protected class(es). *See, e.g.*, *Median v. Ramsey Steel Co.*, 238 F.3d 674, 680-81 (5th Cir. 2001); *EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 972 n.3 (5th Cir. 1984).

In this case, Kebiro has not satisfied his initial burden under the *McDonnell Douglas* framework of establishing *prima facie* cases of discrimination under Title VII and/or the ADEA. This conclusion is predicated on the court's findings that Kebiro was not qualified for any of the

positions sought. While Kebiro may think he is qualified for the promotions sought, Pl.'s Resp. at 8, the court cannot come to a similar conclusion without at least some evidence tending to show that he is. Moreover, Rule 56(e) of the Federal Rules of Civil Procedure states clearly that when a motion for summary judgment is made and properly supported, as Wal-Mart has done here, the adverse party "may not rest upon mere allegations" and must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). As Kebiro failed to set forth any such facts, the court finds accordingly that Wal-Mart is entitled to summary judgment on Kebiro's Title VII and ADEA discrimination claims.

**Kebiro's Title VII and ADEA Retaliation Claims**

As above, when determining whether summary judgment is the proper means of adjudicating retaliation claims under Title VII and the ADEA, courts apply the *McDonnell Douglas* burden-shifting framework. *See Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001). To overcome a defendant's motion for summary judgment under this framework, a plaintiff carries the initial burden of establishing a *prima facie* case of retaliation. A plaintiff does so by showing: (1) that he engaged in an activity protected by Title VII and/or the ADEA; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *See Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996) (stating the *prima facie* elements of a retaliation claim under Title VII); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994) (stating the same *prima facie* elements of a retaliation claim under the ADEA).

Because it is undisputed that Kebiro engaged in activities protected by Title VII and the ADEA, the threshold issue with respect to Kebiro's retaliation claims is whether he has suffered an

adverse employment action. Federal courts take a "narrow view of what constitutes an adverse employment action." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). According to the Supreme Court, an adverse employment action is a "tangible employment action [that] constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

In this case, Kebiro has neither alleged nor proved that he unlawfully suffered an adverse employment action. To wit, Kebiro's retaliation claims are predicated, not on Wal-Mart's failure to promote him, but rather on allegations that he: (1) was given a hard time when he asked for a note to see a doctor in June of 2002, Pl.'s Resp. at 46; (2) was denied breaks or delayed lunch periods, *id*. at 47; (3) was forced to speak to an assistant manager for eleven minutes off the clock, *id*. at 48; (4) was told not to touch the phone in the garden center, *id*. at 49; (5) was refused a transfer to a Wal-Mart store in Lewisville, Texas, *id*. at 53; (6) received only a forty cents per hour raise in 2003 whereas in 2002 he received a fifty cents per hour raise, *id*. at 54; and (7) was not paid for two hours of overtime that he worked in July of 2005, *id*. at 55. Aside from the fact that Kebiro adduced no evidence to substantiate any of these allegations, even assuming they are true, not a single one of them constitutes an adverse employment action in the context Title VII and ADEA retaliation claims. As a result, the court finds that Wal-Mart is entitled similarly to summary judgment on Kebiro's Title VII and ADEA retaliation claims.

**Kebiro's Hostile Work Environment claim**

Kebiro's final claim alleges that he was harassed in the course of his employment at Wal-

Mart and thus subjected to a hostile work environment in violation of Title VII. As above, Kebiro carries the initial burden of establishing a prima facie case of harassment. To do so, Kebiro must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was motivated by his membership in a protected class; and (4) that the harassment affected a term, condition or privilege of his employment. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509-10 (5th Cir. 1999)).

In this case, as above, Kebiro has failed to adduce any evidence that he was harassed in the course of his employment at Wal-Mart. It is well-settled that allegations alone are not sufficient to survive summary judgment. *See* FED. R. CIV. P. 56(e). The court accordingly finds that Wal-Mart is entitled to summary judgment on Kebiro's Title VII hostile work environment claim.

**CONCLUSION**

In sum, because Kebiro has failed to adduce any evidence to substantiate any of his claims, the court finds that there are no genuine issues of material fact determination in this case and that Wal-Mart is entitled to judgment as a matter of law. For these reasons, Wal-Mart's Motion for Summary Judgment is GRANTED.

**SIGNED this the 9th day of December, 2005.**

Richard A. Schell

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE